

Not Reported in F.Supp.2d                                                               Page 1

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re WORLDCOM, INC. SECURITIES
LITIGATION
In re WORLDCOM, INC. ERISA LITIGATION
**Nos. 02 Civ. 3288(DLC), 02 Civ. 4816(DLC).**

Dec. 5, 2002.

In securities litigation and litigation under the Employee Retirement Income Security Act (ERISA) arising from the collapse of a telecommunications corporation, former corporate officers who had been indicted for conduct underlying the civil suits moved for a stay as to them, pending resolution of the criminal matters. Additionally, the U.S. Attorney requested a discovery bar as to former employee of the corporation who were not defendants in the civil suits, and underwriter defendants in the securities litigation requested that any stay granted in favor of the officers be granted in their favor as well. The District Court, Cote, J., held that: (1) stays would be granted as to the officers, except as to their challenges to service and personal jurisdiction; (2) underwriter defendants were not entitled to a stay; and (3) discovery from non-parties identified by the U.S. Attorney would be barred.

Ordered accordingly.

West Headnotes

**[1] Action** ☞69(5)
13k69(5) Most Cited Cases
Stay of securities litigation and ERISA litigation as

to a former chief financial officer (CFO) of a telecommunications corporation was generally warranted, pending resolution of criminal proceedings against the CFO, who had been indicted; the underlying facts alleged in the civil and criminal proceedings were essentially the same, there would not necessarily be any serious delay in the litigation, and there was no appreciable risk that evidence would be lost or events forgotten; moreover, the CFO would effectively forfeit the civil litigation if he invoked the Fifth Amendment, the U.S. Attorney had an interest in preserving the usefulness of cooperating defendants, and the public had an interest in preserving the SVP's assets. U.S.C.A. Const. Amend. 5; Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[2] Action** ☞69(5)
13k69(5) Most Cited Cases
Stay of securities litigation as to a former senior vice president (SVP) of a telecommunications corporation was generally warranted, pending resolution of criminal proceedings against the SVP, who had pled guilty; the underlying facts alleged in the civil and criminal proceedings were essentially the same, there
would not necessarily be any serious delay in the litigation, and there was no appreciable risk that evidence would be lost or events forgotten; moreover, the financial burden on the SVP of defending both criminal and civil proceedings appeared substantial, the U.S. Attorney had an interest in preserving the usefulness of cooperating defendants, and the public had an interest in preserving the SVP's assets.

**[3] Action** ☞69(5)
13k69(5) Most Cited Cases
Stay of securities litigation and ERISA litigation as to a former chief financial officer (CFO) and a former senior vice president (SVP) of a telecommunications corporation pending resolution

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

of criminal proceedings against them was not warranted as to their challenges to service and personal jurisdiction; to discover months or years later that there was a defect in service or a lack of jurisdiction could raise a host of thorny legal issues and delay completion of discovery or a trial. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[4] Action** ☞69(5)
13k69(5) Most Cited Cases
Underwriter defendants in securities litigation arising from the collapse of a telecommunications corporation were not entitled to a stay, even though two former officers were entitled to a stay pending resolution of criminal proceedings against them; while the underwriters claimed that they could not mount an effective defense without discovery from the officers, they had not shown that they would be substantially prejudiced at the motion to dismiss stage, and they could renew the stay request if they could show prejudice at the discovery stage.

**[5] Federal Civil Procedure** ☞1271
170Ak1271 Most Cited Cases
U.S. Attorney would be granted a bar of discovery of non-parties to securities litigation arising from the collapse of a telecommunications corporation; discovery would allegedly have impaired the usefulness of the non-parties as cooperating witnesses in related criminal proceedings.
Max W. Berger, John P. Coffey, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, Leonard Barrack, Gerald J. Rodos, Jeffrey W. Golan , Barrack, Rodos, Bacine, Philadelphia, PA, for Lead Plaintiff in Securities Litigation.

Lynn Lincoln Sarko, Keller Rohrback L.L.P., Seattle, WA, Elizabeth Cabraser, John Low-Beer, Lieff, Cabraser, Heimann & Bernstein LLP, San Francisco, CA, Jerold C. Feuerstein, Kriss & Feuerstein, LLP, New York, NY, for Plaintiffs in Erisa Litigation.

Paul Curnin, Simpson Thacher & Bartlett, New York, NY, for WorldCom Director Defendants.

Jay B. Kasner, John Gardner, Skadden, Arps, Slate,

Meagher & Flom LLP, New York, NY, for Underwriter Defendants.

Eliot Lauer, Curtis, Mallot, Prevost, Colt & Mosley, New York, NY, for Defendant Arthur Anderson, LLP.

David Wertheimer, Lyndon Tretter, Hogan & Hartson, New York, NY, for Defendant Bernard J. Ebbers.

Juliet Rotenberg, Arnold & Porter, Washington, DC, for Defendant Scott Sullivan.

N. Richard Janis, S. Robert Sutton, Janis, Schuelke & Wechsler, Washington, D.C., for Defendant David F. Myers.

*OPINION AND ORDER*

COTE, J.

**\*1** This Document Relates to: All Actions

These two related civil actions, *In re WorldCom, Inc. Securities Litigation,* 02 Civ. 3288(DLC) (the *"Securities Litigation"* ), and *In re WorldCom, Inc. ERISA Litigation,* 02 Civ. 4816(DLC) (the *"ERISA Litigation"* ), arise from the recent collapse of the telecommunications giant WorldCom, Inc. ("WorldCom"). Since June of this year, WorldCom has made a series of disclosures suggesting that all of its publicly-reported financial results since at least as early as 1999 require restatement. A significant amount of civil and criminal litigation has followed. On July 21, WorldCom filed for bankruptcy in the Bankruptcy Court of this district.

Two of the individual defendants who have been indicted in this district for conduct that underlies these civil actions have moved to stay one or both of these civil actions as to them until the criminal charges pending against them have been resolved. Certain other defendants request that in the event a stay is entered, it be entered as to them as well.

Specifically, Scott D. Sullivan ("Sullivan"), formerly the Chief Financial Officer and a Director

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 3
2002 WL 31729501 (S.D.N.Y.)
**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

of WorldCom and now a defendant in both the *Securities Litigation* and the *ERISA Litigation,* and David F. Myers ("Myers"), formerly the Controller and a Senior Vice President of WorldCom and now a defendant in the *Securities Litigation,* submitted motions to stay the instant actions as to them pending the resolution of criminal charges brought against them. The United States Attorney for the Southern District of New York ("U.S.Attorney"), which is conducting a criminal investigation of WorldCom's accounting and business practices, submitted a letter supporting (1) the granting of a stay as to Sullivan, Myers, and Buford Yates, Jr. ("Yates"), [FN1] formerly the Director of General Accounting at WorldCom and now a defendant in the *Securities Litigation,* as well as (2) the entry of a discovery bar as to former WorldCom employees Troy Normand ("Normand") and Betty L. Vinson ("Vinson"), who are not defendants in these civil actions. Certain Underwriter Defendants in the *Securities Litigation,* [FN2] have requested that if a stay is granted in favor of Sullivan or Myers, it be granted in their favor as well. Bernard J. Ebbers ("Ebbers"), formerly the President and Chief Executive Officer and a Director of WorldCom and now a defendant in both actions, and the Director Defendants in the *Securities Litigation* [FN3] and potentially also in the *ERISA Litigation,* [FN4] initially requested similar relief, but now reserve the right to move for a stay at a later stage.

>    FN1. Yates has not yet appeared in either the *Securities Litigation* or the *ERISA Litigation* and has not moved for a stay.

>    FN2. As defined in the consolidated amended complaint, the Underwriter Defendants in the *Securities Litigation* consist of Salomon Smith Barney Inc., J.P. Morgan Chase & Co., Banc of America Securities LLC, Deutsche Bank Securities Inc., now known as Deutsche Bank Alex. Brown Inc., Chase Securities Inc., Lehman Brothers Inc., Blaylock & Partners, L.P., Credit Suisse First Boston Corp., Goldman, Sachs & Co., UBS Warburg LLC, ABN/AMRO Inc., Utendahl Capital, Tokyo-Mitsubishi International plc,

Westdeutsche Landesbank Girozentrale, BNP Paribas Securities Corp., Caboto Holding SIM S.p.A ., Fleet Securities, Inc., and Mizuho International plc. According to their counsel, not all Underwriter Defendants have been served with the consolidated amended complaint.

>    FN3. As defined in the consolidated amended complaint, the WorldCom Director Defendants in the *Securities Litigation* consist of Clifford Alexander, Jr., James C. Allen, Judith Areen, Carl J. Aycock, Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., Gordon S. Macklin, John A. Porter, Bert C. Roberts, Jr., John W. Sidgmore, and Lawrence C. Tucker.

>    FN4. The consolidated amended complaint in the *ERISA Litigation* has not yet been filed. By Order dated November 18, 2002, the Court appointed lead plaintiffs and lead counsel in the *ERISA Litigation* and ordered them to file a consolidated amended complaint by December 20, 2002, and defendants to answer or move with respect to the complaint by January 17, 2003. Both Sullivan and Ebbers are named in each of the actions that were consolidated as the *ERISA Litigation,* and certain Director Defendants were also named in several of those actions.

Sullivan's motion was fully submitted on November 22, and further submissions were made up to November 25. Myers' motion is not yet fully submitted, but the plaintiffs in the *Securities Litigation* have filed their opposition. For the reasons stated below, Sullivan's and Myers' motions to stay are granted in part. The U.S. Attorney's request for the entry of a discovery bar as to Normand and Vinson is also granted. The Underwriter Defendants' request for a stay is denied.

*Background*
*Criminal Action Against WorldCom's Officers*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

**\*2** On August 28, a grand jury returned an indictment (the "Indictment") charging Sullivan and Yates with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5, and five counts of making false filings with the Securities and Exchange Commission ("SEC") in violation of 15 U.S.C. §§ 78m(a) & 78ff and 17 C.F.R. § 240.13a-1. Specifically, the Indictment charged that from approximately October 2000 through June 2002, Sullivan and Yates, along with unindicted co-conspirators Myers, Normand, and Vinson, participated in a scheme to inflate artificially WorldCom's publicly reported earnings by falsely reducing the company's reported "line cost" [FN5] expenses in violation of Generally Accepted Accounting Principles. The conspirators allegedly carried out their scheme by directing and making improper journal entries which had the effect of transferring billions of dollars in line costs from expense accounts in WorldCom's general ledger to certain general ledger accounts for capital expenditures.

> FN5. Pursuant to long-term lease agreements, WorldCom paid third parties fixed fees to lease certain telecommunications facilities and connections. WorldCom referred to these fees as "line costs."

On September 4, Sullivan and Yates were arraigned before the Honorable Barbara S. Jones and released on bail. On September 26, Myers pleaded guilty before the Honorable Richard C. Casey, pursuant to a cooperation agreement with the U.S. Attorney, to a three-count felony Information (the "Information") charging him with conspiracy to commit securities fraud, securities fraud, and false filings with the SEC. On October 7, Yates pleaded guilty before Judge Jones, pursuant to a cooperation agreement with the U.S. Attorney, to the conspiracy and fraud counts of the Indictment. On October 10, Vinson pleaded guilty before the Honorable Andrew J. Peck and Normand pleaded guilty before the Honorable Gerard E. Lynch, pursuant to cooperation agreements, to felony informations

charging them with conspiracy and fraud. Judge Jones has scheduled Sullivan's next pre-trial conference for December 9.

In a letter dated November 15, the U.S. Attorney requests that the time by which Sullivan, Myers, and Yates be required to answer or move in the *Securities Litigation* be adjourned until the end of the criminal proceedings against them. The U.S. Attorney further objects to the service of any deposition notices, interrogatories, or document requests on Sullivan, Myers, Yates, Normand, and Vinson.

*The SEC Civil Action Against WorldCom and Individual Defendants*

On June 26, the SEC filed a civil complaint against WorldCom. On September 26, it filed a civil complaint against Myers. On October 7, it filed a civil complaint against Yates.

On November 14, the Honorable Jed S. Rakoff approved a settlement between the SEC and Myers and Yates granting the SEC certain injunctive relief, but deferring until a later date any judgment with respect to the amount in fines, if any, that Myers and Yates will pay. On November 26, Judge Rakoff approved a comparable settlement between the SEC and WorldCom.

*The Securities and ERISA Plaintiffs' Civil Actions Against WorldCom*

**\*3** The first securities class action filed against defendants in connection with the above-referenced events was filed in this district on April 30, 2002, under the caption *Albert Fadem Trust and Bruce A. Fadem v. Worldcom, Inc., et al.* Thereafter, approximately twenty related class actions were filed. By Order dated August 15, 2002, these cases were consolidated as the *Securities Litigation* and the New York State Common Retirement Fund ("NYSCRF") was appointed lead plaintiff.

By Order dated September 18, *Gail M. Grenier v. WorldCom, Inc., et al.,* 02 Civ. 4816(DLC), and *John T. Alexander v. WorldCom, Inc. et al.,* 02 Civ.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

5140(DLC), both of which allege breaches of fiduciary duty under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.,* by WorldCom and certain WorldCom fiduciaries in connection with the WorldCom 401(k) Salary Savings Plan (the "Plan"), were consolidated as the *ERISA Litigation.* By Order dated October 8, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ordered the centralization in this Court of approximately forty WorldCom-related class action cases, which included both securities and ERISA class actions.

On October 11, NYSCRF filed a consolidated amended complaint (the "Consolidated Complaint") in the *Securities Litigation.* The Consolidated Complaint repeatedly cites to the Indictment and alleges, *inter alia,* essentially the same facts with regard to the conduct of Sullivan, Myers, and Yates as are alleged in the Indictment. The Consolidated Complaint also alleges that Ebbers knowingly participated in the scheme to inflate artificially WorldCom's publicly reported earnings. It further alleges that the Director Defendants violated the securities laws by participating in the filing of false information with the SEC, the dissemination of false registration statements and press releases, and the making of false public statements. The Consolidated Complaint alleges that the Underwriter Defendants violated the securities laws by failing to perform a reasonable investigation of WorldCom's financial statements in connection with their underwriting of certain notes issued by WorldCom. With respect specifically to Salomon Smith Barney, Inc., Citigroup, Inc., and Jack B. Grubman, the Consolidated Complaint further alleges, *inter alia,* that they violated the securities laws by knowingly issuing false analyst reports. The defendants in the *Securities Litigation* must answer or move by December 13.

### Discussion

[T]he Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.... Nevertheless, a court may decide in its discretion to stay civil proceedings ...

when the interests of justice seem ... to require such action.

*Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (citations omitted). A stay is one of several procedures available to the district court to balance the interests of the other parties in moving forward with the litigation against the interests of a defendant asserting Fifth Amendment rights who faces the choice of being prejudiced in the civil litigation if those rights are asserted or prejudiced in the criminal litigation if those rights are waived. *See United States v. Certain Real Property and Premises Known As: 4003-4005 5th Ave.,* 55 F.3d 78, 84 & n. 6 (2d Cir.1995). In deciding whether to enter a stay, courts in this district consider numerous factors, including:

**\*4** 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995) (citations omitted). *See also Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC,* 01 Civ. 7927(DLC), 01 Civ. 10695(DLC), 2002 WL 844345, at *2 (S.D.N.Y. May 2, 2002), *vacated,* 01 Civ. 7927, 01 Civ. 10695 (S.D.N.Y. June 17, 2002); *Sterling Nat'l Bank v. A-1 Hotels Intern., Inc.,* 175 F.Supp.2d 573, 576 (S.D.N.Y.2001) (six-factor test); *Jackson v. Johnson,* 985 F.Supp. 422, 424 (S.D.N.Y.1997) (five-factor test); *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993) (five-factor test); *Arden Way Assoc. v. Boesky,* 660 F.Supp. 1494, 1496-97 (S.D.N.Y.1987) (five-factor test).

### A. Stay as to Sullivan and Myers

[1][2] An examination of the factors identified in *Transworld* indicates that, with a possible limited exception, a stay is appropriate as to Sullivan in the *Securities Litigation* and the *ERISA Litigation* and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

as to Myers in the *Securities Litigation.*

*1. Overlap of Issues*

"The first question to be resolved is the extent to which the issues in the criminal case overlap with those present in the civil case, since self-incrimination is more likely if there is a significant overlap." *Transworld,* 886 F.Supp. at 1139. *See also Volmar Distribs.,* 152 F.R.D. at 39.

The facts alleged with respect to Sullivan and Myers in the Consolidated Complaint are essentially identical with those alleged with respect to them in the Indictment and the Information. In the Consolidated Complaint, the *Securities Litigation* plaintiffs borrow liberally from the Indictment and cite to it repeatedly. They do not contend that their claims are based on facts not alleged by the U.S. Attorney in the Indictment and Information.

*2. Status of the Criminal Case*

Courts in this district have generally refused to stay a civil proceeding where the defendant has not been indicted but is under criminal investigation. *See Sterling Nat'l Bank,* 175 F.Supp.2d at 576-77; *United States v. District Council of New York City and Vicinity of the United Bhd. of Carpenters and Joiners of America,* 782 F.Supp. 920, 925 (S.D.N.Y.1992) (collecting cases). Courts have been more divided on whether to impose stays after criminal indictments have been filed. *Compare Travelers,* 2002 WL 844345, at *2 (S.D.N.Y. May 2, 2002) (declining to stay civil proceedings where defendants under indictment); *Arden Way Assoc.,* 660 F.Supp. at 1496-1500 (declining to stay civil proceedings where defendant facing sentencing); *and Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118, 1119 (S.D.N.Y.1980) (declining to stay where defendant under indictment); *with Travelers,* 01 Civ. 7927, 01 Civ. 10695 (S.D.N.Y. June 17, 2002) (granting stay where defendants under indictment and where stay requested by district attorney); *Trustees,* 886 F.Supp. at 1141 (granting stay following indictment of individual defendants); *and Volmar Distribs.,* 152 F.R.D. at 39 (same). *See also United States v.*

*Simon,* 373 F.2d 649, 653 (2d Cir.1967), *vacated as moot sub nom. Simon v. Wharton,* 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1967) ("We cannot agree that civilized standards of procedure and evidence require that a witness under indictment be given the option of nonappearance in any proceedings in related civil or criminal cases until his own trial is concluded." (citation omitted)).

**\*5** "[T]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar,* 152 F.R.D. at 39. *See also SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (en banc). This is because "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and ... the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Transworld,* 886 F.Supp. at 1139. *See also Sterling Nat'l Bank,* 175 F.Supp.2d at 577.

Sullivan is under indictment for the same conduct that is at the center of these civil actions. Myers has pleaded guilty to charges stemming from conduct that is also at the center of these actions, but has not yet been sentenced.

*3. The Interests of the Plaintiffs*

Before receiving the U.S. Attorney's November 15 letter in support of a limited stay, the plaintiffs had argued that they would be severely prejudiced by the granting of a stay as to Sullivan and Myers. Following receipt of that letter, the plaintiffs in the *Securities Litigation* proposed that Sullivan be required to move with respect to the Consolidated Complaint on December 13. They proposed, however, that if he chooses not to move on that date, then he be allowed to answer no later than the date on which any other defendant who has moved to dismiss the Consolidated Complaint files an answer. They consented to the entry of an order barring discovery of Sullivan and the four individuals cooperating with the U.S. Attorney. In a "Supplemental Memorandum" also submitted after receipt of the U.S. Attorney's November 15 letter,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

plaintiffs in the *Securities Litigation* assume that the stay requested by the Government will be granted as to Sullivan, but continue to argue against it as to any other defendants. In their recent opposition to Myers' motion, they urge that no stay be imposed as to Myers and that he be offered the same set of alternatives as they had proposed should be offered to Sullivan.

The plaintiffs have identified three separate ways in which the entry of a stay as to an individual defendant could prejudice their pursuit of this litigation. They argue that the filing of a motion to dismiss by the individual defendants when the stay is lifted would delay the proceedings as a whole, that a stay as to a wealthy defendant, such as Sullivan, would impede settlement, and that a stay would risk the loss of important evidence through the dimming of recollections.

A motion to dismiss filed by an individual defendant to test the sufficiency of the pleadings after a stay is lifted, even if filed long after such motions have been resolved as to the other defendants, need not cause any serious delay in the litigation. The Opinion addressing similar motions by co-defendants will be the law of the case and should guide the parties in their briefing and expedite a ruling. The length of any delay can also be limited by an appropriate briefing schedule. In the case of Myers, this issue has very little impact. With the entry of his plea and his cooperation with the Government, he has already sacrificed his ability to contest liability in the *Securities Litigation*. It is reasonable to expect that he will attempt at some point to resolve the litigation instead of defending against it.

*6 In response to the plaintiffs' concerns about Sullivan's participation in settlement discussions, Sullivan has expressed a willingness to engage in such discussions even if the litigation is stayed. In any event, the plaintiffs have not shown that Sullivan's absence from the bargaining table will impede their ability to settle with the remaining defendants. It is also important to note that Government authorities, including the U.S. Attorney and the SEC, will no doubt be seeking

restitution from Sullivan. There may be multiple avenues, therefore, for Sullivan to provide financial recovery to shareholders.

Finally, plaintiffs argue that the longer the case against an individual defendant is delayed, the greater the risk that witnesses will begin to lose their recollection of key events. Plaintiffs have not identified the witnesses whose recollections are at stake. Assuming that the litigation survives any motion to dismiss that may be filed, the litigation will proceed against most of the defendants and recollections will be preserved during the course of discovery. This argument has little weight with respect to Sullivan himself since, if no stay as to him is granted, it is entirely speculative as to whether he would submit to a deposition. He would be free to invoke his Fifth Amendment rights, and is likely to do so, having already done so before Congress and in the face of criminal charges. In any event, there is little risk that a delay in taking his deposition will cause his memory of the relevant events to fade. Given the seriousness of the charges he faces, it is reasonable to assume that he is already focusing intently on his conduct while at WorldCom. With respect to Myers, he is cooperating with the U.S. Attorney. Plaintiffs cannot reasonably argue that his recollection of key events will be impaired by a stay. In sum, there is no appreciable risk that any evidence will be lost or key events forgotten with respect to plaintiffs' claims against Sullivan and Myers while the stay is in effect.

[3] There are two ways in which plaintiffs may be significantly prejudiced, however, by any stay. First, Sullivan and Myers have explicitly reserved their right to contest service and personal jurisdiction. These issues should be resolved now and not left for future resolution. To discover months or even years from now that there is a defect in service or a lack of personal jurisdiction with respect to the Consolidated Complaint in the *Securities Litigation* or the consolidated amended complaint to be filed in the *ERISA Litigation* could raise a host of thorny legal issues and significantly delay the completion of discovery or a trial. Therefore, the parties are ordered to show cause no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 8

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

later than December 13, 2002, why Sullivan or Myers should not be required to move promptly to dismiss for failure to serve or a lack of personal jurisdiction or waive those defenses. The U.S. Attorney may also address this issue in a submission on or before December 13.

**\*7** In addition, at the time depositions addressed to the merits of this action begin, it may be appropriate to revisit the breadth of the stay. No deposition should have to be repeated to give Sullivan or Myers an opportunity to question the deponent. Any party may move at an appropriate time to modify the stay imposed as to any individual defendant to reduce or eliminate this prejudice.

*4. The Interests of the Defendants*

Sullivan and Myers each point to the impact of this litigation on their Fifth Amendment rights and on their financial resources. There can be little doubt that an indicted defendant ordinarily faces a very substantial risk of self-incrimination if he chooses to defend against civil charges. Conversely, an adverse inference may be drawn if he chooses instead to invoke his Fifth Amendment privilege. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify.").

The Securities and ERISA Plaintiffs argue that since Sullivan has already invoked his Fifth Amendment privilege before Congress, he will suffer no additional prejudice if he again invokes the Fifth Amendment when he answers on December 13, and that he may, at the Court's discretion, amend his answer thereafter. This argument is unpersuasive. Sullivan invoked his Fifth Amendment privilege in July in a wholly different context. Whereas the House Committee on Financial Services was performing an essentially investigative function, plaintiffs in the instant action have brought civil charges against Sullivan which have the potential to bankrupt him. If he invokes the Fifth Amendment here, he risks effectively forfeiting the actions. The additional prejudice is enormous.

Myers stands in a different position. He has already entered a guilty plea. While the right against self-incrimination ordinarily survives until sentencing, *Mitchell v. United States,* 526 U.S. 314, 325-26, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), Myers has entered into a cooperation agreement with the U.S. Attorney which also requires him to cooperate with the SEC. It can be assumed that he is answering the Government's questions regarding all of the factual issues raised by this litigation. It is unnecessary, however, given the other reasons that favor a stay of civil litigation as to him, to determine the impact of his participation in this litigation on his Fifth Amendment rights.

Sullivan argues that he lacks the financial resources simultaneously to defend against both the criminal and civil actions brought against him. He points out that WorldCom has refused to indemnify him for his costs incurred in defending himself, and the insurance carrier responsible for Sullivan's directors' and officers' insurance at WorldCom has disclaimed coverage of Sullivan under the policy. Plaintiffs respond that Sullivan is currently constructing a residential palace in Florida and has hired a prominent law firm.

**\*8** The burden imposed on Myers by the simultaneous defense of both the criminal and civil actions brought against him appears to be substantial. Myers states, and plaintiffs have not disputed, that he currently faces enormous debts and has more limited financial resources. Furthermore, in light of Myers' cooperation with the Government, it is probable that he will face further pressure on his financial resources as part of any settlement with the SEC or order of restitution.

*5. The Court's Interest*

The Court shares with all parties an interest in the efficient resolution of the instant actions. Nonetheless, a concern for judicial efficiency does not necessarily militate against the granting of a stay. *Compare Transworld,* 886 F.Supp. at 1140 ("Judicial efficiency also weighs in favor of granting a stay.") *with Jackson,* 985 F.Supp. at 425 ("[J]udicial efficiency would not be achieved by a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

stay of this action."). The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges. *See Rosenthal v. Giuliani*, No. 98 Civ. 8408(SWK), 2001 WL 121944, at *2 (S.D.N.Y. Feb.9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties.").

Counsel for lead plaintiffs in the *ERISA Litigation* argue that a stay may result in piecemeal litigation, in which plaintiffs may be required to relitigate certain issues against those in whose favor a stay has been granted. The risk of piecemeal litigation has already been addressed and can be diminished by careful management of the litigation.

Of greater significance to judicial efficiency is the uncertainty as to when the criminal proceedings will conclude. *Compare Transworld*, 886 F.Supp. at 1140 (granting stay as to defendants who "have been indicted and will face trial within six months") *with Jackson*, 985 F.Supp. at 425 (denying stay as to defendant whose criminal proceedings were two years old and where there was no assurance that they would soon be concluding). Myers has already pleaded guilty and is awaiting sentencing. The uncertainty as to his sentencing date is of minimal concern. He is no longer in a position to contest at least those matters to which he admitted in his plea allocution. Sullivan has been indicted but no trial date has been set. If he has not entered a plea or proceeded to trial by the time deposition discovery on the merits of plaintiffs' claims begins, the plaintiffs may move to lift the stay as to Sullivan. Should they do so, the advisability of a stay can be analyzed in light of the status of his prosecution at that time.

*6. The Public Interest*

The U.S. Attorney identifies three reasons why the stay it requests as to Sullivan and Myers would serve the public interest in the effective prosecution

of those who violate the securities laws. First, it argues that the requested stay would "prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC V. Chestman*, 861 F.2d 49, 50 (2d Cir.1988) (per curiam). Because Sullivan is the only defendant who has not pleaded guilty, it would appear that this argument applies to Sullivan alone. So long as Sullivan (and all other parties) are barred from obtaining discovery from individuals who are cooperating with the U.S. Attorney, however, this argument has less force.

**\*9** The U.S. Attorney's second argument is more compelling. The U.S. Attorney has a significant interest in preserving the usefulness of cooperating defendants as Government witnesses. For this reason, the U.S. Attorney does not wish Myers (or Yates) to file verified pleadings. To the extent that the U.S. Attorney and Sullivan are exploring his cooperation with the Government, this argument applies with equal weight to him.

Finally, the U.S. Attorney relies on the public's interest in preserving Sullivan's and Myers' assets as a source of payment of potential restitution orders. Given the enormity of the losses at issue here, this is an important consideration. When a defendant faces a criminal prosecution that is likely to accomplish as much if not more than can be achieved through civil litigation, there is little reason to deplete his resources through payment of attorney's fees to defend or participate in civil litigation that, while important, is essentially duplicative.

Plaintiffs cite *Arden Way*, 660 F.Supp. at 1500, for the proposition that "the public interest in the integrity of the securities markets militates in favor of the efficient and expeditious prosecution of these civil litigations." *Id.* In *Arden Way*, however, the court explicitly noted that no government agency supported a stay, and that "therefore it must be assumed that they consider that a threat to the public interest has not as yet ripened at the pleading stage of this case." *Id.* at 1499-1500. Here, the U.S. Attorney has argued in favor of a stay with respect to Sullivan and Myers and has done so in the name of the public's interest in an effective prosecution of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                         Page 10

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

those who violate the securities laws. *See Volmar Distribs.,* 152 F.R.D. at 40.

Considering the factors identified by courts in this circuit, a stay as to Sullivan and Myers is appropriate. The necessity of a stay as to these two defendants is particularly compelling in light of the clear overlap between the criminal and civil cases brought against them, the request by the U.S. Attorney for a stay, and the public interest in preserving their assets.

*B. Stay as to Ebbers, the Underwriter Defendants, and the Director Defendants*

[4] The Underwriter Defendants request a stay as to them in the event that a stay is entered as to Sullivan or Myers. [FN6] This request is denied. The U.S. Attorney has not brought criminal charges against the Underwriter Defendants, nor does the U.S. Attorney request that a stay be imposed as to them. These defendants thus stand in a radically different position from Sullivan and Myers as to a stay.

> FN6. In their submission responding to Myers' request for a stay, the Underwriter Defendants request only that the action be stayed as to them after their motions to dismiss have been resolved.

The Underwriter Defendants rely principally on the claim that they will not be able to mount an effective defense without the benefit of discovery from Sullivan and Myers. Specifically, they argue that evidence of Sullivan's and Myers' alleged attempt to conceal WorldCom's true financial condition would go directly to any due diligence defense they may mount. To the extent any documents will be necessary to maintain this defense, the bulk of those documents would appear to be in the possession of WorldCom and the Underwriter Defendants themselves. The WorldCom documents already provided to Government investigators have, with limited exceptions, already been made available to all parties in the *Securities Litigation.* [FN7] More to the point, the Underwriter Defendants have not

shown that the entry of a stay as to Sullivan and Myers, but not as to them, will substantially prejudice them at the motion to dismiss stage of these actions. If they can show at the discovery stage that they are substantially prejudiced by the stay as to Sullivan and Myers, then they may renew their request for a stay.

> FN7. In *In re WorldCom, Inc. Securities Litigation,* No. 02 Civ. 3288(DLC), 234 F.Supp.2d 301, 2002 WL 31628566, at *5 (S.D.N.Y. Nov.21, 2002), the Court partially lifted the discovery stay imposed pursuant to Section 21D(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B), to permit plaintiffs to obtain copies of certain documents and materials which related non-party WorldCom had already produced to other entities.

**\*10** The Underwriter Defendants also cite several cases from this district in support of the proposition that the granting of a complete stay as to all defendants would result in a more efficient resolution of the instant actions. *See, e.g., Transworld,* 886 F.Supp. at 1141 ("[I]t is more efficient to grant a complete stay as to all defendants rather than only a partial stay as to the individual ones."); *SEC v. Downe,* No. 92 Civ. 4092(PKL), 1993 WL 22126, at *14 (S.D.N.Y. Jan.26, 1993) (a "partial stay would likely result in additional expenses for the parties without expediting the discovery process"); *and Volmar Distribs.,* 152 F.R.D. at 41-42 (granting complete stay). *But see Philip Morris Inc. v. Heinrich,* No. 95 Civ. 0328(LMM), 1997 WL 781907, at *12 (S.D.N.Y. Dec.18, 1997) (granting stay as to one defendant while allowing action to continue against other defendants); *Philip Morris Inc. v. Heinrich,* No. 95 Civ. 0328(LMM), 1998 WL 167333, at *1 (S.D.N.Y. Apr.8, 1998) (extending individual defendant's time to answer complaint while allowing action to continue as to other defendants). Ultimately, any decision as to a stay is fact bound and must be made after careful consideration of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

circumstances peculiar to the action. In this case, the Underwriter Defendants have not shown any reason for a stay of the litigation as to them at this time.

The Director Defendants and Ebbers do not at this stage of the proceedings request that a stay be granted as to them as well. Rather, they reserve the right at a later date to request a stay. As with the Underwriter Defendants, if they can make a showing of substantial prejudice at the discovery stage, then they may move for a stay at that time.

*C. Stay as to Yates, Normand, and Vinson*

[5] The U.S. Attorney has requested a stay of the litigation with respect to defendant Yates and a bar of discovery of non-parties Vinson and Normand. Each of these three individuals has entered a plea of guilty pursuant to a cooperation agreement. Defendant Yates has taken no position on this request. Should he make an application for a stay, it will be considered promptly.

No party has made a particularized showing that the bar requested by the Government will interfere substantially with any party's ability to prosecute or defend this action. Indeed, no party has opposed the Government's request for a bar of discovery of non-parties Vinson and Normand. The Government represents that the usefulness of its cooperating witnesses will be impaired if they are subjected to depositions or required to answer interrogatories before the completion of the criminal proceedings. Given the strong public interest in the effective enforcement of the nation's securities laws through criminal proceedings, and the representation that premature discovery of testimonial evidence from cooperating witnesses will impair that effective enforcement, the U.S. Attorney's request for a bar order is granted.

*Conclusion*

**\*11** For the reasons stated, Sullivan's and Myers' requests for a stay are granted in part. A bar against discovery of Vinson and Normand is entered. The Underwriter Defendants' requests for a stay are denied.

The parties are ordered to show cause no later than December 13, 2002, why Sullivan or Myers should not be required to move now to dismiss to the extent that they wish to contest service or personal jurisdiction.

SO ORDERED:

2002 WL 31729501 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2973886 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion Concerning Class Representation and Creation of Subclasses (Feb. 24, 2004)

• 2004 WL 2973917 (Trial Pleading) Reply Brief in Support of Certain Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of Their Amended Complaints to Their Original Timely Filed Complaints (Feb. 24, 2004)

• 2003 WL 23671666 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)

• 2003 WL 23951686 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the Worldcom Directors (Dec. 15, 2003)

• 2003 WL 23474886 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)

• 2003 WL 23474903 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23671607 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23474883 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 31729501 (S.D.N.Y.)

**(Cite as: 2002 WL 31729501 (S.D.N.Y.))**

First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474884 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474909 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671611 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671613 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671620 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671623 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671625 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671628 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671646 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.