

Slip Copy  Page 1
Slip Copy, 2006 WL 587828 (E.D.Mich.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan, Southern Division.
Frank D. LACEY, Jr., Plaintiff,
v.
DOORSTEP SHELTER SUBSIDIARY OF MES, INC. and Jon P. Rutherford, Defendants.
**No. 03-CV-75023-DT.**

March 10, 2006.

Frank D. Lacey, Jr., Detroit, MI, pro se.
Kurt D. Yockey, Yockey, Yockey, Farmington Hills, MI, for Defendants.

ORDER DENYING PLAINTIFF'S "MOTION FOR A NEW TRIAL"
CLELAND, J.

**\*1** Pending before the court is Plaintiff Frank D. Lacey, Jr.'s "Motion for a New Trial." The court has reviewed the briefs filed in this matter and concludes that no hearing is required. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Plaintiff's motion.

I. INTRODUCTION

A jury trial testing Plaintiff's employment retaliation claim against Defendants Doorstep Shelter and Jon P. Rutherford was commenced on December 8, 2005 and conducted December 13 until December 15, 2005, when the jury returned a verdict in favor of Defendants and against Plaintiff. Judgment was entered on December 16, 2005 and on December 27, 2005, Plaintiff filed the instant motion in which he argues that he is entitled to a new trial.

II. FEDERAL RULE OF CIVIL PROCEDURE 59(A)

Federal Rule of Civil Procedure 59(a) provides that: A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed.R.Civ.P. 59(a). The Supreme Court has noted that "the authority of trial judges to grant new trials" pursuant to Rule 59(a) "is large." *Gasperini v. Ctr. for the Humanities, Inc.,* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); (" 'The trial judge in the federal system,' we have reaffirmed, 'has ... discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.' ") (quoting *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).

III. DISCUSSION

A. Alleged Improper Conduct By the Court

In his "Motion For a New Trial," Plaintiff contends that the court's "actions in this trial ... influenced the decision of the [j]ury." (Pl.'s Mot. at 2.) More specifically, he points to the court's "tone, inflection and gestures while presenting the [j]ury instructions[,] stressing certain points and minimizing others." (*Id.*) In his motion, Plaintiff also refers to the court's "use [of][P]laintiff's name in an example where the [court] explained to the [j]ury the plaintiff could not be awarded a verdict under circumstances he described [that] were extremely similar if not identical to the facts in this case." (*Id.*) In addition, Plaintiff asserts that the court "made the comment that [P]laintiff wanted to be in [c]ourt while the Defendant did not [, thereby] allocating blame for the inconvenience of many of the [jury members] who clearly did not want to be in court." (*Id.* at 3.)

**\*2** Plaintiff also contends that the court "rewrote the [j]ury instruction [s] to minimally include proofs for establishment of pretext, while expanding

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                            Page 2
Slip Copy, 2006 WL 587828 (E.D.Mich.)
**(Cite as: Slip Copy)**

[P]laintiff[']s needs [sic] to establish proofs of causal connection [and included in the jury instructions] the section identified as Business Judgement [sic] without a request from the Defendants which coincided with the examples he had given to the [j]ury about [P]laintiff not meeting his burden of proofs" (*Id.* at 3-4.) Moreover, Plaintiff argues that the court's "final statements regarding [P]laintiff being *pro se* only served to undermine [P]laintiff's presentation of the case to the [j]ury." (*Id.* at 5.) Plaintiff argues that this statement "let the [j]ury know that Plaintiff was not an attorney and should not be taken seriously." (*Id.* at 6.)

Plaintiff also asserts that the court "would stop what he was doing [to] stare at Defendants['] counsel signaling he should make an objection, in essence acting as [D]efendants['] co-counsel when Defendants['] attorney slept [on] an objection." (Pl.'s Mot. Br. at 13.)

Plaintiff has not attached to his brief a transcript of any of what he purports to have been the court's comments upon which he bases his complaints, nor has he indicated that he unsuccessfully attempted to obtain a transcript in this matter. Instead, Plaintiff has made arguments without evidentiary support. The court cannot conclude that any of the conduct alleged by Plaintiff transpired or if it did, in some form, that it was of any significance.

Directing itself to the substance of Plaintiff's arguments here, the court, first, cannot reliably evaluate its own "tone, inflection and gestures" used in discussing the case with the parties or with the jury. The court can observe only that it attempts to discuss matters with counsel and with the jury, including the delivery of instructions, in a neutral manner, and that the substance of the instructions, which are printed and handed to each juror, should be of comfort to those who worry about tone of voice.

Second, the court recalls an unintentional use of the first name "Frank" in an example given to the jury relating to burden of proof, but that matter was fully discussed upon Plaintiff's contemporaneous objection (for which the court thanks Plaintiff), vetted on the record, and concluded with the court giving a cautionary instruction to the jury. The court believes that there was no lasting harm to Plaintiff's cause of action in that episode.

Third, the court indeed stated that Plaintiff "wanted to be in court while the Defendant did not," or words to that effect, but those comments were in the course of instructing the jury on the burden of proof that Plaintiff must bear. Such comments could not in any reasonable way be interpreted as "allocating blame" for the inconvenience of the jury." The court also doubts that jurors "clearly did not want to be in court," and observes that this jury paid close attention to Plaintiff's presentation and gave him an entirely fair hearing.

**\*3** Fourth, Plaintiff's complaints about the instructions do not suffice to support a motion for new trial. It is true that the court drafted and re-drafted the instructions-with the assistance of the parties-and the record will reveal whether there were any objections. The court recalls none of great substance. The record will also reveal whether they conveyed the law of the case properly, considering the charge to the jury as a whole. *Miller v. Taylor,* 877 F.2d 469, 471 (6th Cir.1989).

Fifth, Plaintiff argues that the court's explanation of his *pro se* status was designed to tell the jury that Plaintiff "should not be taken seriously." Indeed, the court cannot take *this* argument seriously. To the extent that the court explained to the jury that Plaintiff was proceeding *pro se,* the court recalls it was merely to caution them to listen carefully and to not hold against Plaintiff any unschooled missteps he might make or corrections to his presentation that might have to be offered by the court. The full record will reveal whether any possible misstatement was committed by the court; the court recalls none, and with no transcript, Plaintiff points to nothing specific.

Sixth, Plaintiff argues that the court from time to time "stare[d] at Defendants' counsel signaling he should make an objection." The court may well have looked at Defendants' counsel occasionally during the trial, just as the court sometimes looked at Plaintiff. The court can recall no "staring" taking place, but where a court suggests to a party that an objection would be entertained, there is not necessarily any error so long as the court does not impermissibly interject itself into the proceedings. *See United States v. Stavroff,* 149 F.3d 478, 482 (6th Cir.1998) (holding that trial court improperly truncated defendant's cross examination, and noting that "[i]t is not the job of the trial judge to try the case for the government."); *United States v. Bentley,* 726 F.2d 1124, 1126-29 (6th Cir.1984) (where defendant made no motion to suppress confession-related testimony and did not object to testimony at trial, trial court properly raised

Slip Copy                                                                                                        Page 3
Slip Copy, 2006 WL 587828 (E.D.Mich.)
**(Cite as: Slip Copy)**

admissibility issue *sua sponte,* although inquiry was not sufficiently comprehensive). This court does not believe that there was anything like an improper judicial interjection into the proceedings in this case or that Plaintiff's case was in any way prejudiced.

### B. Rulings During Trial

Plaintiff alleges that he "was not allowed to present evidence regarding his first termination [on] July 16, 2002 which could have established [a] pattern of retaliation and established a motive for his second termination." (Pl.'s Mot. at 4.) The court, however, made it clear in its earlier orders and most recently in its December 6, 2005 "Order on Defendants' and Plaintiff's Motions in Limine," entered before the start of trial, that Plaintiff's trial was to be conducted only in relation to his retaliation claim, and extraneous evidence would not be admitted.

**\*4** Plaintiff also alleges that "[e]vidence which suggest[s] that George Birch provided false statement[s] to deny [P]laintiff's civil rights in two civil rights investigations is relevant to Plaintiff['s] claims for [r]elief." (Pl.s Mot. Br. at 8.) Plaintiff complains that "the [c[ourt excused Mr. Birch from reading the statement [in the log note]" and stated " 'if the witness can't remember, he can't remember' and did not make the witness read the log not[e]." (*Id.* at 10.) Plaintiff argues that "the [j]ury had a right to hear what the corrections were and if Mr. Birch could not remember the [j]ury had a right to hear what the errors of his statements were if they were to decide a trial issue." (*Id.* at 11.) In addition to not presenting a transcript of this exchange, Plaintiff has not persuaded the court that the court's handling of the Birch testimony was improper in any way, or resulted in a jury verdict that went against the "weight of evidence." *Gasperini,* 518 U.S. at 433.

Plaintiff also argues that the court called a recess while Plaintiff was in the middle of examining two witnesses, thereby allowing Defendants time to confer with them. (Pl.'s Mot. Br. at 17-18.) The court, however, did not intentionally time the recesses it called in relation to the stage to which Plaintiff had progressed in examining witnesses and Plaintiff has not in any way shown that the timing of the court's recesses had any negative impact on his case.

Plaintiff also complains that he "was not allowed to present evidence in the form of testimony or document[s] which could tend to suggest post employment retaliation." (Pl.'s Mot. at 4.) Plaintiff, however, has never demonstrated how these incidents that he alleges took place after his employment ended are related to his retaliation claim. Federal Rule of Evidence 401 states that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. Fed.R.Evid. 401. "In determining whether evidence is relevant, the district court must not consider the weight or sufficiency of the evidence." *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1344 (6th Cir.1992) (citations omitted). "Even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth." *Id.* (citation omitted). Plaintiff's claim at trial was a particularly narrow one. His claim concerned whether Defendants terminated him as a result of his having made complaints to the EEOC. An elaborate attempt to try *that* case with evidence that relates to dismissed claims or allegations of the behavior of other people outside of the relevant time period is inappropriate. Fed.R.Evid. 401. Any incident that occurred after Plaintiff was no longer employed at Doorstep Shelter was, and remains, irrelevant. *Id.*

**\*5** Plaintiff also states that he "was not allowed to present evidence of discriminatory harassment of others." (Pl.'s Mot. at 4.) No other Doorstep Shelter employee or former employee, however, is a party to this lawsuit. Any testimony suggesting that another employee or former employee had been mistreated is irrelevant. Fed.R.Evid. 401.

### C. Defendants' Late-Filed Reply

Plaintiff also asserts that "Defendants were allowed entry of motion reply two weeks late, irrespective of a motion to strike by the [P]laintiff." (Pl.'s Mot. Br. at 16.) This issue is not suitable to be presented in the instant motion. The court decided Defendants' "Motion for Summary Judgment as to Gender Discrimination" on January 3, 2005. The court does not perceive a relationship between its grant of Defendants' motion and the trial on Plaintiff's retaliation claim.

### D. Magistrate Judge's Discovery Order

Plaintiff asserts that "[s]ome of the discovery

Slip Copy   Page 4
Slip Copy, 2006 WL 587828 (E.D.Mich.)
**(Cite as: Slip Copy)**

[Magistrate] Judge Pepe stated he would instruct the defendants to provide, he did not include in his order." (*Id.* at 12-13.) Plaintiff argues that Magistrate Judge Pepe "did not even consider nor provide an order with regards to numerous discovery issues placed before his court by Plaintiff's request." (*Id.* at 13.) Like his contention that Defendants' "Motion for Summary Judgment as to Gender Discrimination" should have been denied because of Defendants' late-filed reply brief, the issue of Magistrate Judge Pepe's orders relating to discovery is not properly before the court at this juncture. Moreover, Plaintiff has failed to present evidence establishing the veracity of this argument and, even if true, the effect this may have had on his trial.

### E. Jury Pool

Plaintiff argues that the "list of twenty-five people began with a pool sequence number starting at 99 and ending at 141[,] which suggest[s] [that] even though the pool was random the selection of jurist[s] was not." (*Id.* at 17.) Plaintiff has not described how the ordering of the jury selection process used here was improper or that the process of jury selection was not random.

### IV. CONCLUSION

Plaintiff was given the opportunity to select a jury, examine, and cross-examine witnesses, and present evidence. Plaintiff is not due another trial merely because he disagrees with the outcome of the first one.

IT IS ORDERED that Plaintiff's "Motion for a New Trial" [Dkt. # 167] is DENIED.

E.D.Mich.,2006.
Lacey v. Doorstep Shelter Subsidiary of MES, Inc.
Slip Copy, 2006 WL 587828 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 352475 (Trial Motion, Memorandum and Affidavit) Motion for A New Trial Reply Brief (Jan. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 352007 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Motion for New Trial (Jan. 4, 2006) Original Image of this Document (PDF)
• 2005 WL 3721899 (Trial Motion, Memorandum and Affidavit) Plaintiffs' response to Defendants Motion in Limine to Stike any evidence or testimory regarding Claims for Race of Sex (Nov. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3721900 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants Motion in Limine to Strike any Testimony and/or Evidence Regarding Claims of Discrimination and Retaliation against Cynthia Reynolds, or Others (Nov. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3721901 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants Motion in Limine to Strike Plaintiff's Damage Claims for Failure to Mitigate (Nov. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3721902 (Trial Motion, Memorandum and Affidavit) Plaintiff Response to Defendant's Motion in Limine to strike any and all Testimony and/or Evidence Regarding Incidents (3) that Occurred after Plaintiff's Discharge form Employment. (Nov. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3721897 (Trial Motion, Memorandum and Affidavit) Defendants' Trial Brief (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3721898 (Trial Motion, Memorandum and Affidavit) Defendant's Motion in Limine to Strike Plaintiff's Claims for Damages (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3721895 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion in Limine to Strike Defendants Affirmative (Nov. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3721896 (Trial Motion, Memorandum and Affidavit) Plaintiff's Trial Brief in Support of Retaliation (Nov. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 2915833 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment as to Retaliation (May 27, 2005) Original Image of this Document (PDF)
• 2:03cv75023 (Docket) (Dec. 15, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.