47 Fed.Appx. 266 Page 1
47 Fed.Appx. 266, 2002 WL 2026257 (C.A.6 (Mich.))
**(Cite as: 47 Fed.Appx. 266)**



Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.NOT RECOMMENDED FOR FULL--TEXT PUBLICATION Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court. Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,Sixth Circuit.
Danny Jay PITTMAN, Plaintiff-Appellee,
v.
ANR FREIGHT SYSTEMS, INC., a/k/a ANR Advance Transportation Company, Inc., t/a Continental Express; James Lattimore, and Behnke Trucking, Incorporated, Defendants-Appellants.
No. 00-2501.

Aug. 29, 2002.

Motorist brought action against truck driver and his employer to recover for damages incurred when his vehicle was struck in rear by truck. After jury verdict in favor of plaintiff, the United States District Court for the Eastern District of Michigan denied defendants' motions for judgment as a matter of law and for new trial, and defendants appealed. The Court of Appeals, Williams, Senior District Judge, sitting by designation, held that: (1) admission of testimony of motorist's treating physicians and disability specialist was not abuse of discretion; (2) exclusion of plaintiff's statement that he had pulled over to side of road to "choke his chicken" was not abuse of discretion; and (3) issue of whether defendant was negligent was for jury.

Affirmed.

West Headnotes

**[1] Evidence 157 555.10**

157 Evidence
   157XII Opinion Evidence
      157XII(D) Examination of Experts
         157k555 Basis of Opinion
           157k555.10 k. Medical Testimony. Most Cited Cases
District court's admission of testimony of motorist's treating physicians and disability specialist regarding motorist's injuries was not abuse of discretion in motorist's action to recover for damages incurred in accident, even if physicians relied on motorist's self-reported medical history rather than independent testing or differential diagnosis, where physicians also conducted physical exams of motorist, reviewed MRI done four months after accident, and were aware that motorist had fallen at least twice at work following accident, and specialist administered tests and used methodology generally accepted within his field. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[2] Evidence 157 146**

157 Evidence
   157IV Admissibility in General
      157IV(D) Materiality
         157k146 k. Tendency to Mislead or Confuse. Most Cited Cases
District court's decision to exclude motorist's statement to police officer that he had pulled over to side of road to "choke his chicken" was not abuse of discretion in motorist's action to recover for damages incurred in accident that occurred when he attempted to get back onto road, where motorist stipulated that he had made illegal nonemergency stop, and statement was subject to highly inflammatory interpretation. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[3] Automobiles 48A 245(15)**

48A Automobiles
   48AV Injuries from Operation, or Use of Highway
      48AV(B) Actions
         48Ak245 Questions for Jury
           48Ak245(2) Care Required and Negligence
              48Ak245(15) k. Vehicles Following, Overtaking, or Passing. Most Cited Cases
Issue of whether truck driver was negligent in striking rear of vehicle merging onto road after making nonemergency stop was for jury in action to recover for damages incurred in accident, in light of multiple issues of fact, including credibility of witnesses.

***266** On Appeal from the United States District Court for the Eastern District of Michigan.

Before DAUGHTREY and; CLAY, Circuit Judges;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and WILLIAMS, Senior District Judge.[FN*]

> [FN*] The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

WILLIAMS, Senior District Judge.
**\*\*1** Defendants-Appellants ANR Freight Systems, Inc., ("ANR") and James Lattimore ("Lattimore") (collectively, "Defendants"), appeal from a jury verdict in favor of Plaintiff, Danny Jay Pittman ("Pittman"). For the reasons set forth below, we **AFFIRM** the district court.

### II. Background

This case arises out of a June 16, 1995, accident occurring on eastbound Interstate 96 near Fowlerville, Michigan, at approximately 11:50 a.m. (J.A. at 15.) According to Pittman, he pulled off of the road just west of an overpass near Fowlerville to urinate. (J.A. at 617.) Upon re-entering his vehicle, Pittman returned to the highway, checking behind him to ensure a clear lane in which to merge. (J.A. at 618.) Pittman accelerated into the right lane and was traveling at approximately 50 miles per hour when his vehicle was struck in the rear by Lattimore's truck. (J.A. at 645.)

Lattimore's version of the accident is somewhat different. Lattimore testified that Pittman was not in the right lane, but was in the process of merging into the lane. (J.A. at 524-25.) Lattimore located the collision at a point closer to where Pittman first stopped than did other witnesses. (J.A. at 527.) According to Lattimore, Pittman pulled in front of him, and, because cars occupied the left lane and the right side of the road contained merging traffic from an on-ramp, he was unable to avoid the collision. (J.A. at 518-534.)

James Murphy ("Murphy") is the only eyewitness to the accident who is not a party to the litigation. He was driving his car eastbound as he approached Pittman's truck. (J.A. at 542.) At no point did Murphy see Pittman on the side of the road. According to Murphy's testimony, Pittman was in the right eastbound lane from the time he approached Pittman, and at all times until the accident. (J.A. at 542, 545.) Murphy moved to the left lane to pass Pittman. As he did so, Lattimore's truck passed him in the right lane with no noticeable indications of slowing down or any efforts to avoid hitting Pittman and collided with Pittman's trailer. (J.A. at 546-48.) Murphy further testified that he "thought maybe he (Lattimore) might have had a heart attack, that something physically was wrong with him or that he might have had some sort of physical ailment that didn't make it possible for him to stop because there was no, there was really no slowing down until he hit [Pittman's] truck." (J.A. at 549.)

After the accident occurred, Pittman continued to drive his truck out of the sight of Lattimore. (J.A. at 531.) Pittman explained in his testimony that this was due to the force of the impact causing him to bounce about the passenger compartment, knocking him unconscious. (J.A. at 648.) Pittman had no recollection of how he stopped the vehicle, where it finally came to a stop, or how far he traveled before stopping. (J.A. at 648-49.) Emergency personnel transported Pittman to a hospital, where he was treated for minor bumps and bruises, and instructed to take aspirin for pain. (J.A. at 620.) While in the hospital, Pittman was interviewed by a police officer investigating the accident. When the officer asked why Pittman had **\*268** pulled to the side of the road before the accident, Pittman responded that his stop was for the purpose of "choking his chicken." (J.A. at 1494, 1532.)

**\*\*2** At trial, Lattimore rested on a motion for judgment as a matter of law and presented no evidence. The jury found the Defendants 67 % negligent and Pittman 33 % negligent and awarded $333,000 in economic damages and $760,000 in noneconomic damages, as indicated on the verdict form. (J.A. at 126-28.) The total judgment awarded Pittman, after reduction by 33 %, was $732,310.

At the conclusion of the trial, the Defendants renewed their motion for judgment as a matter of law, or in the alternative, moved for a new trial. Both motions were denied, and the Defendants now appeal.

### II. Analysis

An appellate court's review of a trial court's denial of a motion for judgment as a matter of law is *de novo*. "Judgment as a matter of law is appropriate only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party." *Fisher v. Ford Motor Co., 224 F.3d 570, 575 (6th Cir.2000)*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 266                                                                                                Page 3
47 Fed.Appx. 266, 2002 WL 2026257 (C.A.6 (Mich.))
**(Cite as: 47 Fed.Appx. 266)**

(quoting *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1078 (6th Cir.1999)). This is the same standard used by the district court in evaluating the motion. See *Fisher,* 224 F.3d at 574 (citing *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1023 (6th Cir.1993)).

The standard of review for a denied motion for a new trial is an abuse of discretion standard. "In determining whether to grant a new trial when the claim is that the verdict is against the weight of the evidence, a district court must compare and weigh the opposing evidence and it must set aside the verdict if it determines that the verdict is against the clear weight of the evidence." *Clay v. Ford Motor Co.,* 215 F.3d 663, 672 (6th Cir.2000). An abuse of discretion is usually found only when the court develops "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal quotations and citations omitted).

A. Testimony of Drs. Peppleman, Hartman and Ancell

The Defendants first contend that the district court committed reversible error by allowing the testimony of Drs. Peppleman, Hartman and Ancell. More specifically, the Defendants allege that the testimony of the three doctors violates the *Daubert* and *Kumho Tire* standards promulgated by the Supreme Court in that the doctors' opinions were unreliable under those standards. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469(1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238(1999). According to the Defendants, the admission of the opinions of Drs. Peppleman and Hartman as evidence of the cause of Pittman's injuries was error because no other evidence of causation was presented. Therefore, Defendants argue they were entitled to judgment as a matter of law, or a new trial, in the alternative.

The Defendants object to the testimony only as it relates to injury causation, not the extent of the injuries themselves. Pittman responds that the Defendants' objections to the doctors' testimony is based on the conclusions reached rather than the methods used to reach those conclusions. Further, Pittman argues that the trial court fulfilled its "gate keeping" role by ascertaining the viability of the science underlying the conclusions reached by the various doctors and that the testimony was, therefore, properly admitted.

**\*269 \*\*3** Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. The Supreme Court has given courts guidance in the application of this rule in recent cases. In *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, the Court determined that a trial judge served as a "gate keeper" in order to determine whether the testimony was necessary and allowable. The Court specifically withheld issuing any sort of checklist for judges to use, recognizing that it could not anticipate all situations or witnesses or future changes in science and technology that may need expert explanation. 509 U.S. at 593. Rather, the Court relied on general principles, assigning trial judges "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." 509 U.S. at 597.

The Court expanded and emphasized the flexibility given to trial judges in the subsequent case *Kumho Tire Co.* 526 U.S. 137, 119 S.Ct. 1167. The Court stated that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. Further, the Court stated that the standard of review to be used by courts of appeal in reviewing a trial court's decisions about admitting or excluding expert testimony, including determinations about reliability, is an abuse of discretion standard. *Id.*

The Defendants' argument that the expert testimony in this case is unreliable is based primarily on their assertion that the medical testimony of the treating physicians, Drs. Hartman and Peppleman, was derived from a self-reported medical history rather than independent testing or a "differential diagnosis." The Defendants rely extensively on the lack of a differential diagnosis, pointing to the case of *Hardyman v. Norfolk & Western Railway. Co.,* 243 F.3d 255 (6th Cir.2001). In *Hardyman,* the court defined a differential diagnosis as one in which a doctor has eliminated all other potential causes of a patient's symptoms. 243 F.3d at 260-61. The court began its discussion of differential diagnosis, however, by calling it "[o]ne appropriate method for making a determination of causation." *Id.* at 260.

The Defendants' objections to the testimony of Dr. Ancell[FN1] are not quite as well expressed as those against Drs. Hartman and Peppleman. Nonetheless,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Defendants appear to object on the same basis, that the testimony was not based on reliable science. The Defendants assert that Dr. Ancell, like Drs. Hartman and Peppleman, was allowed to testify on the basis of assumptions, speculation and conjecture without conducting any analysis, testing or other application of specialized knowledge.

> FN1. Dr. Ancell is not a physician, but has a Ph.D. in Human Services. "J.A. at 1180."

While Drs. Hartman and Peppleman did indeed rely upon Pittman's self-reported medical history, both also conducted physical exams of Pittman and reviewed an MRI done four months after the accident revealing a ruptured disk in his back. Both doctors were aware that Pittman had continued to work following the accident and that he had fallen at least twice, falls attributed to the pain generated by the injury itself. Dr. Hartman also relied on his own past experience in treating similar injuries sustained in rear-end collisions.

**\*\*4** [1] Dr. Ancell completed a four step analysis of Pittman, including interviewing and getting a work history, testing intelligence, aptitude, achievement and other parameters, and a review of medical records. (J.A. at 1183-84.) Dr. Ancell testified that **\*270** all tests he administered and the methodology he used are generally accepted within the field and all have been subjected to peer review within the relevant journals. (J.A. at 1184-91.) This comports with the standard set forth by the Supreme Court, which stated that widespread acceptance of scientific theories and techniques, thorough testing, publication and peer review, and consideration of known or potential rates of error are valid factors to assist a court in determining admissibility of expert testimony. See *Daubert, 509 U.S. at 593-94*. Therefore, the district court's decision to admit the testimony of Pittman's experts was not an abuse of discretion, and that court's denial of Defendants' motion for judgment as a matter of law or a new trial on the issue of expert testimony is affirmed.

### B. Plaintiff's Admission

The Defendants next contend that the district court committed reversible error by excluding evidence of Pittman's admission that he had pulled to the side of the road in order to "choke his chicken." The Defendants argue that the admission was excluded because the trial judge concluded that Defendants' theory of the case was flawed, and that such a conclusion goes to the weight that should be accorded the evidence, not its admissibility.

Pittman responds that the ruling of the trial judge was proper. The Plaintiff explains more fully the conditions surrounding the admission and its exclusion. Pittman was interviewed by a police officer in the hospital following the accident. The officer asked Pittman why he had pulled to the side of the road, and Pittman responded that the purpose of his stop was for "choking his chicken." During his deposition, Pittman was asked if he had pulled to the side of the road in order to masturbate. Pittman responded, "My Jesus. No, sir. Choking your chicken is truckers' language. Choking your chicken that means urinating."

Pittman filed a motion to exclude the statement to the police officer from evidence prior to the trial. The motion did not seek to exclude evidence that Pittman had made a nonemergency stop, only the statement made to the police officer. At a hearing on the motion, Lattimore argued that the statement should be admitted as part of the Defendants' contention that Pittman pulled to the side of the road to masturbate, began the act, decided it would be enhanced by continuing the act while driving, and commenced driving his truck while masturbating. Based on this theory, Pittman was so self-involved that he failed to yield the right of way and was, therefore, the sole cause of the accident. The Defendants further contend this was the reason Pittman failed to stop immediately after the accident.

The court determined that the Defendants' theory was "patently preposterous, and the subject matter of the inquiry so highly inflammatory that it indeed represent[ed] unfair prejudice totally unsupported by any evidence in the case." (J.A. at 335-36.) The court further conditioned its exclusion of this statement on the Plaintiff's agreement not to pursue any theory that may indicate that his stop was for an emergency purpose. (J.A. at 335-36.) Instead, Pittman stipulated that his stop was for nonemergency purposes. For these reasons, Pittman contends that the district court did not abuse its discretion in excluding this evidence.

**\*\*5** An appellate court reviewing a trial court's exclusion of evidence does so based on an abuse of discretion standard. "A district court has broad discretion to determine matters of relevance, and we

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 266                                                                                                                  Page 5
47 Fed.Appx. 266, 2002 WL 2026257 (C.A.6 (Mich.))
**(Cite as: 47 Fed.Appx. 266)**

review a district court's decision to exclude evidence under Fed.R.Evid. 403 only for ***271** an abuse of discretion that affected the substantial rights of a party." *Williams v. The Nashville Network,* 132 F.3d 1123, 1129 (6th Cir.1997) (internal quotations and citations omitted). Further, an appellate court "will reverse only when [it] find[s] that such abuse of discretion has caused more than harmless error." *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir.1994) (citations omitted).

[2] Pittman's stop on the side of the road was relevant to the extent that it violated a Michigan statute rendering such nonemergency stops illegal. The reason for that stop, regardless of its purpose, is irrelevant. Pittman's statement that he was "choking his chicken" is, as the preceding discussion illustrates, open to interpretation. Either way, the statement could serve no purpose other than to embarrass the Plaintiff and inflame the jury. Therefore, the district court's decision to exclude the admission of Pittman's statement to the police officer in light of Pittman's stipulation that he had made a nonemergency stop, was not an abuse of discretion, and is affirmed.

### C. Sufficient Evidence of Negligence

The Defendants next appeal the trial court's denial of their renewed motion for judgment as a matter of law, or, in the alternative, a new trial, made after the return of the jury's verdict. At trial, Defendants' argument that judgment as a matter of law was appropriate centered on Plaintiff's failure to present an accident reconstruction expert. On appeal, Defendants contend that Plaintiff's evidence is inadequate to prove negligence or the cause of Pittman's injuries. Thus, Defendants raise the issue of inadequacy of the evidence for the first time on appeal, effectively waiving review apart from plain error. *See Owens Corning v. Nat'l Union Fire Ins. Co.,* 257 F.3d 484, 493 n. 4 (6th Cir.2001).

Defendants now argue that the jury could not have found Lattimore negligent based on the evidence, but instead relied upon speculation and conjecture. Defendants assert that this position is supported by the jury's finding of comparative negligence, in that the jury could not have found Lattimore violated any assured clear distance or rear-end statutes that provide a presumption of negligence against him. Instead, they argue, the jury must have found that Pittman merged into traffic below the minimum posted speed without yielding the right of way, thus, abrogating any duty Lattimore had to Pittman and rendering Pittman solely responsible.

The Defendants also argue that Lattimore should not be found negligent based on the sudden emergency doctrine. According to this argument, Pittman's sudden entry onto the highway created an emergency situation, and Lattimore's reactions under the circumstances should not incur any liability.

**\*\*6** Pittman responds that the Defendants are not entitled to judgment as a matter of law on the issues of negligence or proximate cause, nor are they entitled to a new trial, because the jury properly resolved issues of fact within its province and the verdict was not inconsistent. Pittman asserts that there were multiple issues of fact to be resolved by the jury, including credibility of the witnesses. As for an inconsistent verdict, Pittman responds that the Defendants argued continually throughout the trial that Pittman violated a Michigan statute, Mich. Comp. Laws Ann. § 257.672(1) (West 2002), which states that no driver may stop on the side of the freeway for nonemergency purposes. This statute, combined with the stipulation that Pittman did indeed make a ***272** nonemergency stop, would allow the jury to find Pittman negligent to a degree.

[3] We conclude the district court properly denied Defendants' motion for judgment as a matter of law or, in the alternative, a new trial, because the evidence presented issues of fact properly resolved by the jury. During a hearing on the renewed motion, the district court stated, "It's obvious to the Court, having presided over the trial that the jury flatly rejected Mr. Lattimore's testimony, instead relied heavily on Mr. Murphy's testimony." (J.A. at 875.) The district court stated further that "... I'm not making the factual call in this case, that was made by the jury, and I cannot find that the jury was unreasonable in arriving at that conclusion." (J.A. at 877.) We agree. The jury was entitled to resolve credibility issues and discrepancies in the testimony of the witnesses. The trial court's decision to deny the Defendants' motion for judgment as a matter of law or, in the alternative, a new trial, is hereby affirmed.

### D. Damage Award

The Defendants next argue that the damages awarded were clearly and grossly excessive and that

47 Fed.Appx. 266                                                                                                                          Page 6
47 Fed.Appx. 266, 2002 WL 2026257 (C.A.6 (Mich.))
**(Cite as: 47 Fed.Appx. 266)**

Defendants, therefore, are entitled to a new trial on damages. The jury awarded $333,000 in economic damages and $760,000 in noneconomic damages. The Defendants contend that Pittman was employable as early as 2000 in his former occupations, and that, in any case, he never earned more than $40,000 a year. As such, the economic damages are excessive, according to the Defendants.

The Defendants further argue that the $760,000 award is excessive because the surgery performed on Pittman was a success and any impairments suffered have been remediated. Further, the Defendants contend that the award is out of line with similar personal injury cases.

Pittman responds that such arguments are not supported by the evidence, in that all three doctors stated Pittman was disabled from ever returning to his prior occupations. (J.A. at 1373-76; 1270-72; 1210-11.) Further, each of the treating physicians testified to the amount of pain suffered by Pittman as a result of the injuries sustained. (J.A. at 1278-80; 1263-64; 1276; 1309-12; 1352; 1388; 1343; 1355-56.) Pittman contends his activities were severely limited, and he suffered with depression for which medication had to be prescribed. (J.A. at 1317-18; 1356.) In addition, he argues that while he benefitted from corrective surgery, he still must contend with stiffness, limited range of motion and occasional pain. Pittman claims that, based on this evidence, the jury determined the amount of compensation due Pittman.

**\*\*7** The Defendants fail to point to any significant evidence which would indicate a reduction in damages is warranted, or that a new trial on damages is needed. Pittman, on the other hand, points to the testimony of three expert witnesses, all of whom testified that he suffered a great deal of pain and is unable to return to prior work. Based on this evidence, the trial court's affirmation of the jury verdict is hereby affirmed.

The Defendants assert in their Statement of Issues and again in the Summary of Argument that Plaintiff's counsel engaged in misconduct at trial. However, no argument on this issue is ever presented throughout the brief. Issues raised but left unargued are considered waived. _Buziashvili v. Inman, 106 F.3d 709, 719 (6th Cir.1997)._ Once waived, the Defendants cannot resurrect the issue in their reply brief. "We normally decline to consider issues not raised in the appellant's opening brief." **\*273**_Priddy v. Edelman,_ 883 F.2d 438, 446 (6th Cir.1989); see also _Wright v. Holbrook,_ 794 F.2d 1152, 1157 (6th Cir.1986). For this reason, the misconduct issue is waived and not considered here.

### III. Conclusion

For the above stated reasons, we **AFFIRM** the decision of the district court.

C.A.6 (Mich.),2002.
Pittman v. ANR Freight Systems, Inc.
47 Fed.Appx. 266, 2002 WL 2026257 (C.A.6 (Mich.))

Briefs and Other Related Documents _(Back to top)_

• 00-2501 (Docket) (Dec. 21, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.